(Post 11/2015)

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 2 8 2022

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
_____Central_____ **DIVISION**

Daveon Ragins
_____
_____
(Name of plaintiff or plaintiffs)

v.

CIVIL ACTION NO. 4:22-cv-598-JM
(case number to be supplied by the assignment clerk)

Pace Industries
_____
_____

This case assigned to District Judge _Moody_
and to Magistrate Judge _Harris_

(Name of defendant or defendants)

**COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination.  Jurisdiction is specifically conferred on the Court by  42 U.S.C. §2000e-5.   Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.    Plaintiff, _Daveon M Ragin_, is a
(name of plaintiff)
citizen of the United States and resides at _2207 Singleton CV_,
(street address)
_Little Rock_, _Pulaski_, _Arkansas_, _72204_,
(city)        (county)         (state)      (ZIP)
_501 626 4099_.
(telephone)

3.    Defendant, _Pace Industries_, lives at, or its
(name of defendant)
business is located at _513 US-62_, _Harrison_,
(street address)                (city)
_____, _Arkansas_, _72601_.
(county)          (state)          (ZIP)

4.    Plaintiff sought employment from the defendant or was employed by the

defendant at _____513 US-62_____, _____Harrison_____,
                  (street address)                         (city)

_____, _____Arkansas_____, _____72601_____.
(county)          (state)        (ZIP)

5.    Defendant discriminated against plaintiff in the manner indicated in paragraphs 9 and 10 of the complaint on or about _____May_____ _____21_____ _____2021_____.
                                      (month)       (day)      (year)

6.    Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging defendant with the acts of discrimination indicated in paragraphs 9 and 10 of this complaint on or about _____August_____ _____27_____ _____2021_____.
                                      (month)     (day)    (year)

7.    The Equal Employment Opportunity Commission issued a Notice of Right to Sue which was received by plaintiff on _____March_____ _____30_____ _____2022_____, a copy of which notice is attached to this complaint.
                                      (month)   (day)   (year)

8.    Because of plaintiff's (1) _____ race, (2) _____ color, (3)_____ sex, (4) _____ religion, (5) _____ national origin, defendant:

        (a) _____ failed to employ plaintiff.

        (b) _____ terminated plaintiff's employment.

        (c) _____ failed to promote plaintiff.

        (d) _____

_____

_____

_____

_____

9.    The circumstances under which the defendant discriminated against plaintiff were

as follows: _refer to EEoc Charge of discrimination_
_attached_ _____

_____

_____

_____

_____

_____

_____

10.   The acts set forth in paragraph 9 of this complaint:

(a) _____ are still being committed by defendant.

(b) _____ are no longer being committed by defendant.

(c) _____ may still be being committed by defendant.

11.   Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission which charges are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

(a) _____ Defendant be directed to employ plaintiff, and

(b) _____ Defendant be directed to re-employ plaintiff, and

(c) _____ Defendant be directed to promote plaintiff, and

(d) _____ Defendant be directed to _Pay a Settlement of $250,000_

and that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

_____
SIGNATURE OF PLAINTIFF

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 493-2021-01503 |

_____ and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MR. DAVEON RAGINS** | **501-626-4099** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **5601 DREHER LN, #93, LITTLE ROCK,AR 72209** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **PACE INDUSTRIES** | **101 - 200** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **513 US-62, HARRISON, AR 72601** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest **05-21-2021**   Latest **06-16-2021**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was employed by a Staffing Agency and assigned to work for the Respondent on May 21, 2021. During the term of my assignment, I was harassed in the form of comments and conduct including, but not limited to, a Supervisor came into the breakroom and loudly told me to return to the floor in the presence of Coworkers; a Supervisor told Hispanic Coworkers and me, I thought you guys were supposed to be hard workers, and told us to get back to work; a Supervisor yelled I had been on been on break for 30-something minutes, and they werent paying me for stealing time; and I was denied the opportunity to file a grievance. I was removed from the assignment on June 16, 2021.

I believe I was harassed because of my race, African American, and harassed and removed from the assignment in retaliation for reporting harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Daveon Ragins on 08-27-2021 01:57 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## LETTER OF INTENT TO SUE

Date: 6/28/2022

From: Daveon Ragins

2207 Singleton cove

Little Rock , Arkansas 72204

To: Pace Industries

513 US-62

Harrison , Arkansas 72601

Re: Notice of Intent to File a Lawsuit

Dear Pace Industries ,

The purpose of this Letter is to provide a formal notice that Daveon Ragins ("Plaintiff") intend
a lawsuit against Pace Industries ("Defandant") due to the reasons explained as follows: The reason
lawsuit is because I was employed by Pace Industries starting on may 21, 2021. During my empl
duration I was received unfair treatment in the form of discrimination, had several racist comments
me and well and being denied the right to grievance any of the problems I dealt with. And upon seeki
with said issues I was wrongfully terminated which lead to emotional suffering, monetary loss and
problems in my personal life.

1. Settlement Demand. As a result of the aforementioned actions, the Plaintiff desires relie
form of:

Payment in the amount of Two Hundred and Fifty Thousand Dollars Dollars ($250,000)

This offer to settle the matter out of court and avoid a lawsuit is valid for 60 Days days from th
If the Plaintiff does not receive a favorable response in 60 Days days, the Plaintiff will immediately
lawsuit.

2. Governing Law. This Letter of Intent to Sue shall be governed by, and construed in acc
with, the laws of the State of Arkansas.

Sincerely,

_____

2

# EEOC (INQUIRY) NUMBER: 493-2021-01503

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 06/15/2021

**Reason for Complaint:** Race, Color, Retaliation - I complained to my employer about job discrimination

**Pay Disparity:**

**Location of Incident:** Arkansas

**Submission (initial inquiry) Date:** 07/08/2021

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:** N/A

**Charge Number:** N/A

**Claim previously filed as complaint with another Agency?** No

**Agency Name:** N/A

**Approximate Date of Filing:** N/A

**Nature of Complaint:** N/A

### INQUIRY OFFICE

**Receiving:** Little Rock Area Office

**Accountable:** Little Rock Area Office

### APPOINTMENT

**Appointment Date and time:** 08/26/2021 10:30 AM US/Central

**Interview Type:** Phone

### APPROXIMATE DEADLINE FOR FILING A CHARGE:    12/12/2021

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:** Daveon

**Last Name:** Ragins

**Street or Mailing Address:** 5601 Dreher ln

**Address Line 2:** #93

**City, State, Zip:**  LITTLE ROCK, AR, 72209

**Country:**

**Year of Birth:**

**Email Address:**  mr.ragins@gmail.com

**Home Phone Number:**  501-626-4099

**Cell Phone Number:**

## RESPONDENT/Employer

**Organization Name:**  PACE INDUSTRIES

**Type of Employer:**  Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:**  20 or more employees

**Street or Mailing Address:**  513 US-62

**Address Line 2:**

**City, State, Zip Code:**  HARRISON,AR, 72601

**County:**  Boone

**Phone Number:**

## RESPONDENT CONTACT

**First and Last Name:**

**Email Address:**

**Phone Number:**

**Title:**  Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:**

**Address Line 2:**

**City, State, Zip Code:**

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** M

**Disabled:** I do not have a disability

**Are you Hispanic or Latino?** not hispanic or latino

**Ethnicity:** American Indian or Alaskan Native, Black or African American,

**National Origin:** American(U.S.)

## Adverse Action(s)

I was denied the right to file a proper grievance for actions that I felt were unfair. I was forced into a one sided mitigation that resulted in further mistreatments and my firing

# Supplemental Information

## What Reason(s) were you given for the action taken against you?

The use of profanity during the one sided mitigation

## Was anyone in a similar situation treated the same, better, or worse than you?

Jeremy Bertrand & Jeffery Callaway were the 2 other guy?s operating the same machine as me. After my one sided mitigation which was just after lunch time, I was not given my last break of the day but the other 2 guys were who just so happen to be white

## Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.

Jeffery Calloway 8593004753 & Jeremy Bertrand both can attest to me not receiving a break that day. As well as Jeffery can attest to the different levels of treatment pertaining to the attitude of the managers concerning our breaks. Albert5012972446 can attest to the mistreat of all the African Americans that worked there because he faces similar issues! Juan & his family who are all Latino+1 (559) 826-5744 can attest to the blatant disrespect and mistreatment

## Please tell us any other information about your experience?

There was constant mistreatment rather subtle or blatant that took place from the first day we all got there

Case 4:22-cv-00598-JM   Document 2   Filed 06/28/22   Page 11 of 58

# 7 U.S. Code § 25 - Private rights of action

U.S. Code       Notes

**(a)ACTUAL DAMAGES; ACTIONABLE TRANSACTIONS; EXCLUSIVE REMEDY**

**(1)**Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person—

**(A)**who received trading advice from such person for a fee;

**(B)**who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity) or any swap; or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract or any swap;

**(C)**who purchased from or sold to such person or placed through such person an order for the purchase or sale of—

**(i)**an option subject to section 6c of this title (other than an option purchased or sold on a registered entity or other board of trade);

**(ii)**a contract subject to section 23 of this title; or [1]

**(iii)**an interest or participation in a commodity pool; or

**(iv)**a swap; or

**(D)**who purchased or sold a contract referred to in subparagraph (B) hereof or swap if the violation constitutes—

**(i)**the use or employment of, or an attempt to use or employ, in connection with a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative device or contrivance in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010; or

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 12 of 58

**(ii)**a manipulation of the price of any such contract or swap or the price of the commodity underlying such contract or swap.

**(2)**Except as provided in subsection (b), the rights of action authorized by this subsection and by sections 7(d)(13), 7a–1(c)(2)(H), and 21(b)(10) of this title shall be the exclusive remedies under this chapter available to any person who sustains loss as a result of any alleged violation of this chapter. Nothing in this subsection shall limit or abridge the rights of the parties to agree in advance of a dispute upon any forum for resolving claims under this section, including arbitration.

**(3)**In any action arising from a violation in the execution of an order on the floor of a registered entity, the person referred to in paragraph (1) shall be liable for—

**(A)**actual damages proximately caused by such violation. If an award of actual damages is made against a floor broker in connection with the execution of a customer order, and the futures commission merchant which selected the floor broker for the execution of the customer order is held to be responsible under section 2(a)(1) of this title for the floor broker's violation, such futures commission merchant may be required to satisfy such award; and

**(B)**where the violation is willful and intentional, punitive or exemplary damages equal to no more than two times the amount of such actual damages. If an award of punitive or exemplary damages is made against a floor broker in connection with the execution of a customer order, and the futures commission merchant which selected the floor broker for the execution of the customer order is held to be responsible under section 2(a)(1) of this title for the floor broker's violation, such futures commission merchant may be required to satisfy such award if the floor broker fails to do so, except that such requirement shall apply to the futures commission merchant only if it willfully and intentionally selected the floor broker with the intent to assist or facilitate the floor broker's violation.

**(4)**CONTRACT ENFORCEMENT BETWEEN ELIGIBLE COUNTERPARTIES.—

**(A)**In general.—
No hybrid instrument sold to any investor shall be void, voidable, or unenforceable, and no party to a hybrid instrument shall be entitled to rescind, or recover any payment made with respect to, the hybrid instrument under this section or any other provision of Federal or State law, based solely on the failure of the hybrid instrument to comply with the terms or conditions of section 2(f) of this title or regulations of the Commission.

**(B)**Swaps.—No agreement, contract, or transaction between eligible contract participants or persons reasonably believed to be eligible contract participants shall be void, voidable, or unenforceable, and no party to such agreement, contract, or transaction shall be entitled to

rescind, or recover any payment made with respect to, the agreement, contract, or transaction under this section or any other provision of Federal or State law, based solely on the failure of the agreement, contract, or transaction—

    **(i)**to meet the definition of a swap under section 1a of this title; or

    **(ii)**to be cleared in accordance with section 2(h)(1) of this title.

## (5)LEGAL CERTAINTY FOR LONG-TERM SWAPS ENTERED INTO BEFORE JULY 21, 2010.—

**(A)**Effect on swaps.—
Unless specifically reserved in the applicable swap, neither the enactment of the Wall Street Transparency and Accountability Act of 2010, nor any requirement under that Act or an amendment made by that Act, shall constitute a termination event, force majeure, illegality, increased costs, regulatory change, or similar event under a swap (including any related credit support arrangement) that would permit a party to terminate, renegotiate, modify, amend, or supplement 1 or more transactions under the swap.

**(B)**Position limits.—
Any position limit established under the Wall Street Transparency and Accountability Act of 2010 shall not apply to a position acquired in good faith prior to the effective date of any rule, regulation, or order under the Act that establishes the position limit; provided, however, that such positions shall be attributed to the trader if the trader's position is increased after the effective date of such position limit rule, regulation, or order.

## (6)CONTRACT ENFORCEMENT FOR FOREIGN FUTURES CONTRACTS.—
A contract of sale of a commodity for future delivery traded or executed on or through the facilities of a board of trade, exchange, or market located outside the United States for purposes of section 6(a) of this title shall not be void, voidable, or unenforceable, and a party to such a contract shall not be entitled to rescind or recover any payment made with respect to the contract, based on the failure of the foreign board of trade to comply with any provision of this chapter.

## (b)LIABILITIES OF ORGANIZATIONS AND INDIVIDUALS; BAD FAITH REQUIREMENT; EXCLUSIVE REMEDY

### (1)

**(A)**A registered entity that fails to enforce any bylaw, rule, regulation, or resolution that it is required to enforce by section 7, 7a–1, 7a–2, 7b–3, or 24a of this title, (B) a licensed board of trade that fails to enforce any bylaw, rule, regulation, or resolution that it is required to enforce by the Commission, or (C) any registered entity that in enforcing any such bylaw, rule, regulation, or resolution violates this chapter or any Commission rule, regulation, or order, shall be liable for

actual damages sustained by a person who engaged in any transaction on or subject to the rules of such registered entity to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaws, rules, regulations, or resolutions.

**(2)**A registered futures association that fails to enforce any bylaw or rule that is required under section 21 of this title or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation, or order shall be liable for actual damages sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule.

**(3)**Any individual who, in the capacity as an officer, director, governor, committee member, or employee of registered [2] entity or a registered futures association willfully aids, abets, counsels, induces, or procures any failure by any such entity to enforce (or any violation of the chapter in enforcing) any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, shall be liable for actual damages sustained by a person who engaged in any transaction specified in subsection (a) of this section on, or subject to the rules of, such registered entity or, in the case of an officer, director, governor, committee member, or employee of a registered futures association, any transaction specified in subsection (a) of this section, in either case to the extent of such person's actual losses that resulted from such transaction and were caused by such failure or violation.

**(4)**A person seeking to enforce liability under this section must establish that the registered entity [3] registered futures association, officer, director, governor, committee member, or employee acted in bad faith in failing to take action or in taking such action as was taken, and that such failure or action caused the loss.

**(5)**The rights of action authorized by this subsection shall be the exclusive remedy under this chapter available to any person who sustains a loss as a result of (A) the alleged failure by a registered entity or registered futures association or by any officer, director, governor, committee member, or employee to enforce any bylaw, rule, regulation, or resolution referred to in paragraph (1) or (2) of this subsection, or (B) the taking of action in enforcing any bylaw, rule, regulation, or resolution referred to in this subsection that is alleged to have violated this chapter, or any Commission rule, regulation, or order.

**(c)JURISDICTION; STATUTE OF LIMITATIONS; VENUE; PROCESS**
The United States district courts shall have exclusive jurisdiction of actions brought under this section. Any such action shall be brought not later than two years after the date the cause of action arises. Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 15 of 58

wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.

**(d)**DATES OF APPLICATION TO ACTIONS

The provisions of this section shall become effective with respect to causes of action accruing on or after the date of enactment of the Futures Trading Act of 1982 [January 11, 1983]: Provided, That the enactment of the Futures Trading Act of 1982 shall not affect any right of any parties which may exist with respect to causes of action accruing prior to such date.

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 16 of 58

# 12 U.S. Code § 4617 - Authority over critically undercapitalized regulated entities

U.S. Code    Notes

### (a)APPOINTMENT OF THE AGENCY AS CONSERVATOR OR RECEIVER

#### (1)IN GENERAL
Notwithstanding any other provision of Federal or State law, the Director may appoint the Agency as conservator or receiver for a regulated entity in the manner provided under paragraph (2) or (4). All references to the conservator or receiver under this section are references to the Agency acting as conservator or receiver.

#### (2)DISCRETIONARY APPOINTMENT
The Agency may, at the discretion of the Director, be appointed conservator or receiver for the purpose of reorganizing, rehabilitating, or winding up the affairs of a regulated entity.

#### (3)GROUNDS FOR DISCRETIONARY APPOINTMENT OF CONSERVATOR OR RECEIVER
The grounds for appointing conservator or receiver for any regulated entity under paragraph (2) are as follows:

#### (A)Assets insufficient for obligations
The assets of the regulated entity are less than the obligations of the regulated entity to its creditors and others.

#### (B)Substantial dissipation
Substantial dissipation of assets or earnings due to—

**(i)**any violation of any provision of Federal or State law; or

**(ii)**any unsafe or unsound practice.

#### (C)Unsafe or unsound condition
An unsafe or unsound condition to transact business.

#### (D)Cease and desist orders
Any willful violation of a cease and desist order that has become final.

#### (E)Concealment

Any concealment of the books, papers, records, or assets of
the regulated entity, or any refusal to submit the books, papers,
records, or affairs of the regulated entity, for inspection to any
examiner or to any lawful agent of the Director.

**(F)Inability to meet obligations**
The regulated entity is likely to be unable to pay its obligations or meet
the demands of its creditors in the normal course of business.

**(G)Losses**
The regulated entity has incurred or is likely to incur losses that will
deplete all or substantially all of its capital, and there is no reasonable
prospect for the regulated entity to become adequately capitalized (as
defined in section 4614(a)(1) of this title).

**(H)Violations of law**
Any violation of any law or regulation, or any unsafe or unsound
practice or condition that is likely to—

**(i)**cause insolvency or substantial dissipation of assets or earnings;
or

**(ii)**weaken the condition of the regulated entity.

**(I)Consent**
The regulated entity, by resolution of its board of directors or its
shareholders or members, consents to the appointment.

**(J)Undercapitalization**
The regulated entity is undercapitalized or significantly
undercapitalized (as defined in section 4614(a)(3) of this title), and
—

**(i)**has no reasonable prospect of becoming adequately capitalized;

**(ii)**fails to become adequately capitalized, as required by—

**(I)**section 4615(a)(1) of this title with respect to a regulated
entity; or

**(II)**section 4616(a)(1) of this title with respect to a significantly
undercapitalized regulated entity;

**(iii)**fails to submit a capital restoration plan acceptable to
the Agency within the time prescribed under section 4622 of this
title; or

**(iv)**materially fails to implement a capital restoration plan
submitted and accepted under section 4622 of this title.

### (K)Critical undercapitalization
The regulated entity is critically undercapitalized, as defined in section 4614(a)(4) of this title.

### (L)Money laundering
The Attorney General notifies the Director in writing that the regulated entity has been found guilty of a criminal offense under section 1956 or 1957 of title 18 or section 5322 or 5324 of title 31.

## (4)Mandatory receivership

### (A)In general
The Director shall appoint the Agency as receiver for a regulated entity if the Director determines, in writing, that—

**(i)**the assets of the regulated entity are, and during the preceding 60 calendar days have been, less than the obligations of the regulated entity to its creditors and others; or

**(ii)**the regulated entity is not, and during the preceding 60 calendar days has not been, generally paying the debts of the regulated entity (other than debts that are the subject of a bona fide dispute) as such debts become due.

### (B)Periodic determination required for critically undercapitalized regulated entity
If a regulated entity is critically undercapitalized, the Director shall make a determination, in writing, as to whether the regulated entity meets the criteria specified in clause (i) or (ii) of subparagraph (A)—

**(i)**not later than 30 calendar days after the regulated entity initially becomes critically undercapitalized; and

**(ii)**at least once during each succeeding 30-calendar day period.

### (C)Determination not required if receivership already in place
Subparagraph (B) does not apply with respect to a regulated entity in any period during which the Agency serves as receiver for the regulated entity.

### (D)Receivership terminates conservatorship
The appointment of the Agency as receiver of a regulated entity under this section shall immediately terminate any conservatorship established for the regulated entity under this chapter.

## (5)Judicial review

### (A)In general

If the Agency is appointed conservator or receiver under this section, the regulated entity may, within 30 days of such appointment, bring an action in the United States district court for the judicial district in which the home office of such regulated entity is located, or in the United States District Court for the District of Columbia, for an order requiring the Agency to remove itself as conservator or receiver.

**(B)Review**
Upon the filing of an action under subparagraph (A), the court shall, upon the merits, dismiss such action or direct the Agency to remove itself as such conservator or receiver.

**(6)DIRECTORS NOT LIABLE FOR ACQUIESCING IN APPOINTMENT OF CONSERVATOR OR RECEIVER**
The members of the board of directors of a regulated entity shall not be liable to the shareholders or creditors of the regulated entity for acquiescing in or consenting in good faith to the appointment of the Agency as conservator or receiver for that regulated entity.

**(7)AGENCY NOT SUBJECT TO ANY OTHER FEDERAL AGENCY**
When acting as conservator or receiver, the Agency shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of the Agency.

**(b)POWERS AND DUTIES OF THE AGENCY AS CONSERVATOR OR RECEIVER**

**(1)RULEMAKING AUTHORITY OF THE AGENCY**
The Agency may prescribe such regulations as the Agency determines to be appropriate regarding the conduct of conservatorships or receiverships.

**(2)GENERAL POWERS**

**(A)Successor to regulated entity**
The Agency shall, as conservator or receiver, and by operation of law, immediately succeed to—

**(i)**all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity; and

**(ii)**title to the books, records, and assets of any other legal custodian of such regulated entity.

**(B)Operate the regulated entity**
The Agency may, as conservator or receiver—

**(i)**take over the assets of and operate the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct all business of the regulated entity;

**(ii)**collect all obligations and money due the regulated entity;

**(iii)**perform all functions of the regulated entity in the name of the regulated entity which are consistent with the appointment as conservator or receiver;

**(iv)**preserve and conserve the assets and property of the regulated entity; and

**(v)**provide by contract for assistance in fulfilling any function, activity, action, or duty of the Agency as conservator or receiver.

## (C)Functions of officers, directors, and shareholders of a regulated entity
The Agency may, by regulation or order, provide for the exercise of any function by any stockholder, director, or officer of any regulated entity for which the Agency has been named conservator or receiver.

## (D)Powers as conservator
The Agency may, as conservator, take such action as may be—

**(i)**necessary to put the regulated entity in a sound and solvent condition; and

**(ii)**appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity.

## (E)Additional powers as receiver
In any case in which the Agency is acting as receiver, the Agency shall place the regulated entity in liquidation and proceed to realize upon the assets of the regulated entity in such manner as the Agency deems appropriate, including through the sale of assets, the transfer of assets to a limited-life regulated entity established under subsection (i), or the exercise of any other rights or privileges granted to the Agency under this paragraph.

## (F)Organization of new enterprise
The Agency may, as receiver for an enterprise, organize a successor enterprise that will operate pursuant to subsection (i).

## (G)Transfer or sale of assets and liabilities
The Agency may, as conservator or receiver, transfer or sell any asset or liability of the regulated entity in default, and may do so without any approval, assignment, or consent with respect to such transfer or sale.

### (H)Payment of valid obligations

The Agency, as conservator or receiver, shall, to the extent of proceeds realized from the performance of contracts or sale of the assets of a regulated entity, pay all valid obligations of the regulated entity that are due and payable at the time of the appointment of the Agency as conservator or receiver, in accordance with the prescriptions and limitations of this section.

### (I)Subpoena authority

#### (i)In general

##### (I)Agency authority

The Agency may, as conservator or receiver, and for purposes of carrying out any power, authority, or duty with respect to a regulated entity (including determining any claim against the regulated entity and determining and realizing upon any asset of any person in the course of collecting money due the regulated entity), exercise any power established under section 4588 of this title.

##### (II)Applicability of law

The provisions of section 4588 of this title shall apply with respect to the exercise of any power under this subparagraph, in the same manner as such provisions apply under that section.

#### (ii)Subpoena

A subpoena or subpoena duces tecum may be issued under clause (i) only by, or with the written approval of, the Director, or the designee of the Director.

#### (iii)Rule of construction

This subsection shall not be construed to limit any rights that the Agency, in any capacity, might otherwise have under section 4517 or 4639 of this title.

### (J)Incidental powers

The Agency may, as conservator or receiver—

(i)exercise all powers and authorities specifically granted to conservators or receivers, respectively, under this section, and such incidental powers as shall be necessary to carry out such powers; and

(ii)take any action authorized by this section, which the Agency determines is in the best interests of the regulated entity or the Agency.

### (K)Other provisions

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 22 of 58

### (i) Shareholders and creditors of failed regulated entity

Notwithstanding any other provision of law, the appointment of the Agency as receiver for a regulated entity pursuant to paragraph (2) or (4) of subsection (a) and its succession, by operation of law, to the rights, titles, powers, and privileges described in subsection (b)(2)(A) shall terminate all rights and claims that the stockholders and creditors of the regulated entity may have against the assets or charter of the regulated entity or the Agency arising as a result of their status as stockholders or creditors, except for their right to payment, resolution, or other satisfaction of their claims, as permitted under subsections (b)(9), (c), and (e).

### (ii) Assets of regulated entity

Notwithstanding any other provision of law, for purposes of this section, the charter of a regulated entity shall not be considered an asset of the regulated entity.

## (3) AUTHORITY OF RECEIVER TO DETERMINE CLAIMS

### (A) In general

The Agency may, as receiver, determine claims in accordance with the requirements of this subsection and any regulations prescribed under paragraph (4).

### (B) Notice requirements

The receiver, in any case involving the liquidation or winding up of the affairs of a closed regulated entity, shall—

**(i)** promptly publish a notice to the creditors of the regulated entity to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the date of publication of such notice; and

**(ii)** republish such notice approximately 1 month and 2 months, respectively, after the date of publication under clause (i).

### (C) Mailing required

The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the books of the regulated entity—

**(i)** at the last address of the creditor appearing in such books; or

**(ii)** upon discovery of the name and address of a claimant not appearing on the books of the regulated entity, within 30 days after the discovery of such name and address.

## (4) RULEMAKING AUTHORITY RELATING TO DETERMINATION OF CLAIMS

Subject to subsection (c), the Director may prescribe regulations regarding the allowance or disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination.

### (5) PROCEDURES FOR DETERMINATION OF CLAIMS

#### (A) Determination period

##### (i) In general
Before the end of the 180-day period beginning on the date on which any claim against a regulated entity is filed with the Agency as receiver, the Agency shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

##### (ii) Extension of time
The period described in clause (i) may be extended by a written agreement between the claimant and the Agency.

##### (iii) Mailing of notice sufficient
The requirements of clause (i) shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the last address of the claimant which appears—

**(I)** on the books of the regulated entity;

**(II)** in the claim filed by the claimant; or

**(III)** in documents submitted in proof of the claim.

##### (iv) Contents of notice of disallowance
If any claim filed under clause (i) is disallowed, the notice to the claimant shall contain—

**(I)** a statement of each reason for the disallowance; and

**(II)** the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim.

#### (B) Allowance of proven claim
The receiver shall allow any claim received on or before the date specified in the notice published under paragraph (3)(B)(i) by the receiver from any claimant which is proved to the satisfaction of the receiver.

#### (C) Disallowance of claims filed after filing period
Claims filed after the date specified in the notice published under paragraph (3)(B)(i), or the date specified under paragraph (3)(C), shall be disallowed and such disallowance shall be final.

### (D)Authority to disallow claims

#### (i)In general
The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver.

#### (ii)Payments to less than fully secured creditors
In the case of a claim of a creditor against a regulated entity which is secured by any property or other asset of such regulated entity, the receiver—

**(I)**may treat the portion of such claim which exceeds an amount equal to the fair market value of such property or other asset as an unsecured claim against the regulated entity; and

**(II)**may not make any payment with respect to such unsecured portion of the claim, other than in connection with the disposition of all claims of unsecured creditors of the regulated entity.

#### (iii)Exceptions
No provision of this paragraph shall apply with respect to—

**(I)**any extension of credit from any Federal Reserve Bank, Federal Home Loan Bank, or the United States Treasury; or

**(II)**any security interest in the assets of the regulated entity securing any such extension of credit.

### (E)No judicial review of determination pursuant to subparagraph (D)
No court may review the determination of the Agency under subparagraph (D) to disallow a claim.

### (F)Legal effect of filing

#### (i)Statute of limitation tolled
For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action.

#### (ii)No prejudice to other actions
Subject to paragraph (10), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the date of the appointment of the receiver, subject to the determination of claims by the receiver.

### (6)PROVISION FOR JUDICIAL DETERMINATION OF CLAIMS

### (A)In general

The claimant may file suit on a claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the principal place of business of the regulated entity is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim), before the end of the 60-day period beginning on the earlier of—

**(i)**the end of the period described in paragraph (5)(A)(i) with respect to any claim against a regulated entity for which the Agency is receiver; or

**(ii)**the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i).

### (B)Statute of limitations

A claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver), and such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim, if the claimant fails, before the end of the 60-day period described under subparagraph (A), to file suit on such claim (or continue an action commenced before the appointment of the receiver).

## (7)REVIEW OF CLAIMS

### (A)Other review procedures

#### (i)In general

The Agency shall establish such alternative dispute resolution processes as may be appropriate for the resolution of claims filed under paragraph (5)(A)(i).

#### (ii)Criteria

In establishing alternative dispute resolution processes, the Agency shall strive for procedures which are expeditious, fair, independent, and low cost.

#### (iii)Voluntary binding or nonbinding procedures

The Agency may establish both binding and nonbinding processes under this subparagraph, which may be conducted by any government or private party. All parties, including the claimant and the Agency, must agree to the use of the process in a particular case.

### (B)Consideration of incentives

The Agency shall seek to develop incentives for claimants to participate in the alternative dispute resolution process.

**(8)EXPEDITED DETERMINATION OF CLAIMS**

### (A)Establishment required

The Agency shall establish a procedure for expedited relief outside of the routine claims process established under paragraph (5) for claimants who—

**(i)**allege the existence of legally valid and enforceable or perfected security interests in assets of any regulated entity for which the Agency has been appointed receiver; and

**(ii)**allege that irreparable injury will occur if the routine claims procedure is followed.

### (B)Determination period

Before the end of the 90-day period beginning on the date on which any claim is filed in accordance with the procedures established under subparagraph (A), the Director shall—

**(i)**determine—

**(I)**whether to allow or disallow such claim; or

**(II)**whether such claim should be determined pursuant to the procedures established under paragraph (5); and

**(ii)**notify the claimant of the determination, and if the claim is disallowed, provide a statement of each reason for the disallowance and the procedure for obtaining agency review or judicial determination.

### (C)Period for filing or renewing suit

Any claimant who files a request for expedited relief shall be permitted to file a suit, or to continue a suit filed before the date of appointment of the receiver, seeking a determination of the rights of the claimant with respect to such security interest after the earlier of—

**(i)**the end of the 90-day period beginning on the date of the filing of a request for expedited relief; or

**(ii)**the date on which the Agency denies the claim.

### (D)Statute of limitations

If an action described under subparagraph (C) is not filed, or the motion to renew a previously filed suit is not made, before the end of the 30-day period beginning on the date on which such action or motion may be filed under subparagraph (B), the claim shall be deemed to be disallowed as of the end of such period (other than any

portion of such claim which was allowed by the receiver), such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

### (E) Legal effect of filing

#### (i) Statute of limitation tolled

For purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action.

#### (ii) No prejudice to other actions

Subject to paragraph (10), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action that was filed before the appointment of the receiver, subject to the determination of claims by the receiver.

## (9) PAYMENT OF CLAIMS

### (A) In general

The receiver may, in the discretion of the receiver, and to the extent that funds are available from the assets of the regulated entity, pay creditor claims, in such manner and amounts as are authorized under this section, which are—

**(i)** allowed by the receiver;

**(ii)** approved by the Agency pursuant to a final determination pursuant to paragraph (7) or (8); or

**(iii)** determined by the final judgment of any court of competent jurisdiction.

### (B) Agreements against the interest of the Agency

No agreement that tends to diminish or defeat the interest of the Agency in any asset acquired by the Agency as receiver under this section shall be valid against the Agency unless such agreement is in writing and executed by an authorized officer or representative of the regulated entity.

### (C) Payment of dividends on claims

The receiver may, in the sole discretion of the receiver, pay from the assets of the regulated entity dividends on proved claims at any time, and no liability shall attach to the Agency by reason of any such payment, for failure to pay dividends to a claimant whose claim is not proved at the time of any such payment.

### (D) Rulemaking authority of the Director

Case 4:22-cv-00598-JM   Document 2   Filed 06/28/22   Page 28 of 58

The Director may prescribe such rules, including definitions of terms, as the Director deems appropriate to establish a single uniform interest rate for, or to make payments of post-insolvency interest to creditors holding proven claims against the receivership estates of the regulated entity, following satisfaction by the receiver of the principal amount of all creditor claims.

### (10) SUSPENSION OF LEGAL ACTIONS

#### (A) In general

After the appointment of a conservator or receiver for a regulated entity, the conservator or receiver may, in any judicial action or proceeding to which such regulated entity is or becomes a party, request a stay for a period not to exceed—

**(i)** 45 days, in the case of any conservator; and

**(ii)** 90 days, in the case of any receiver.

#### (B) Grant of stay by all courts required

Upon receipt of a request by the conservator or receiver under subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties.

### (11) ADDITIONAL RIGHTS AND DUTIES

#### (A) Prior final adjudication

The Agency shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Agency as conservator or receiver.

#### (B) Rights and remedies of conservator or receiver

In the event of any appealable judgment, the Agency as conservator or receiver—

**(i)** shall have all of the rights and remedies available to the regulated entity (before the appointment of such conservator or receiver) and the Agency, including removal to Federal court and all appellate rights; and

**(ii)** shall not be required to post any bond in order to pursue such remedies.

#### (C) No attachment or execution

No attachment or execution may issue by any court upon assets in the possession of the receiver, or upon the charter, of a regulated entity for which the Agency has been appointed receiver.

#### (D) Limitation on judicial review

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 29 of 58

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

**(i)**any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets or charter of any regulated entity for which the Agency has been appointed receiver; or

**(ii)**any claim relating to any act or omission of such regulated entity or the Agency as receiver.

### (E)Disposition of assets

In exercising any right, power, privilege, or authority as conservator or receiver in connection with any sale or disposition of assets of a regulated entity for which the Agency has been appointed conservator or receiver, the Agency shall conduct its operations in a manner which—

**(i)**maximizes the net present value return from the sale or disposition of such assets;

**(ii)**minimizes the amount of any loss realized in the resolution of cases; and

**(iii)**ensures adequate competition and fair and consistent treatment of offerors.

### (12)STATUTE OF LIMITATIONS FOR ACTIONS BROUGHT BY CONSERVATOR OR RECEIVER

#### (A)In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Agency as conservator or receiver shall be—

**(i)**in the case of any contract claim, the longer of—

**(I)**the 6-year period beginning on the date on which the claim accrues; or

**(II)**the period applicable under State law; and

**(ii)**in the case of any tort claim, the longer of—

**(I)**the 3-year period beginning on the date on which the claim accrues; or

**(II)**the period applicable under State law.

#### (B)Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

**(i)**the date of the appointment of the Agency as conservator or receiver; or

**(ii)**the date on which the cause of action accrues.

### (13)REVIVAL OF EXPIRED STATE CAUSES OF ACTION

#### (A)In general
In the case of any tort claim described under clause (ii) for which the statute of limitations applicable under State law with respect to such claim has expired not more than 5 years before the appointment of the Agency as conservator or receiver, the Agency may bring an action as conservator or receiver on such claim without regard to the expiration of the statute of limitations applicable under State law.

#### (B)Claims described
A tort claim referred to under clause (i) is a claim arising from fraud, intentional misconduct resulting in unjust enrichment, or intentional misconduct resulting in substantial loss to the regulated entity.

### (14)ACCOUNTING AND RECORDKEEPING REQUIREMENTS

#### (A)In general
The Agency as conservator or receiver shall, consistent with the accounting and reporting practices and procedures established by the Agency, maintain a full accounting of each conservatorship and receivership or other disposition of a regulated entity in default.

#### (B)Annual accounting or report
With respect to each conservatorship or receivership, the Agency shall make an annual accounting or report available to the Board, the Comptroller General of the United States, the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Committee on Financial Services of the House of Representatives.

#### (C)Availability of reports
Any report prepared under subparagraph (B) shall be made available by the Agency upon request to any shareholder of a regulated entity or any member of the public.

#### (D)Recordkeeping requirement
After the end of the 6-year period beginning on the date on which the conservatorship or receivership is terminated by the Director, the Agency may destroy any records of such regulated entity which

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 31 of 58

the Agency, in the discretion of the Agency, determines to be unnecessary, unless directed not to do so by a court of competent jurisdiction or governmental agency, or prohibited by law.

### (15) FRAUDULENT TRANSFERS

#### (A) In general

The Agency, as conservator or receiver, may avoid a transfer of any interest of an entity-affiliated party, or any person determined by the conservator or receiver to be a debtor of the regulated entity, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the Agency was appointed conservator or receiver, if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the regulated entity, the Agency, the conservator, or receiver.

#### (B) Right of recovery

To the extent a transfer is avoided under subparagraph (A), the conservator or receiver may recover, for the benefit of the regulated entity, the property transferred, or, if a court so orders, the value of such property (at the time of such transfer) from—

**(i)** the initial transferee of such transfer or the entity-affiliated party or person for whose benefit such transfer was made; or

**(ii)** any immediate or mediate transferee of any such initial transferee.

#### (C) Rights of transferee or obligee

The conservator or receiver may not recover under subparagraph (B) from—

**(i)** any transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith; or

**(ii)** any immediate or mediate good faith transferee of such transferee.

#### (D) Rights under this paragraph

The rights under this paragraph of the conservator or receiver described under subparagraph (A) shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under title 11.

### (16) ATTACHMENT OF ASSETS AND OTHER INJUNCTIVE RELIEF

Subject to paragraph (17), any court of competent jurisdiction may, at the request of the conservator or receiver, issue an order in accordance with rule 65 of the Federal Rules of Civil Procedure, including an order placing

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 32 of 58

the assets of any person designated by the conservator or receiver under the control of the court, and appointing a trustee to hold such assets.

**(17) STANDARDS OF PROOF**
Rule 65 of the Federal Rules of Civil Procedure shall apply with respect to any proceeding under paragraph (16) without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

**(18) TREATMENT OF CLAIMS ARISING FROM BREACH OF CONTRACTS EXECUTED BY THE CONSERVATOR OR RECEIVER**

**(A) In general**
Notwithstanding any other provision of this subsection, any final and unappealable judgment for monetary damages entered against the conservator or receiver for the breach of an agreement executed or approved in writing by the conservator or receiver after the date of its appointment, shall be paid as an administrative expense of the conservator or receiver.

**(B) No limitation of power**
Nothing in this paragraph shall be construed to limit the power of the conservator or receiver to exercise any rights under contract or law, including to terminate, breach, cancel, or otherwise discontinue such agreement.

**(19) GENERAL EXCEPTIONS**

**(A) Limitations**
The rights of the conservator or receiver appointed under this section shall be subject to the limitations on the powers of a receiver under sections 4402 through 4407 of this title.[1]

**(B) Mortgages held in trust**

**(i) In general**
Any mortgage, pool of mortgages, or interest in a pool of mortgages held in trust, custodial, or agency capacity by a regulated entity for the benefit of any person other than the regulated entity shall not be available to satisfy the claims of creditors generally, except that nothing in this clause shall be construed to expand or otherwise affect the authority of any regulated entity.

**(ii) Holding of mortgages**
Any mortgage, pool of mortgages, or interest in a pool of mortgages described in clause (i) shall be held by the conservator or receiver appointed under this section for the beneficial owners of such mortgage, pool of mortgages, or interest in accordance with the terms of the agreement creating such trust, custodial, or other agency arrangement.

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 33 of 58

### (iii)Liability of conservator or receiver

The liability of the conservator or receiver appointed under this section for damages shall, in the case of any contingent or unliquidated claim relating to the mortgages held in trust, be estimated in accordance with the regulations of the Director.

## (c)PRIORITY OF EXPENSES AND UNSECURED CLAIMS

### (1)IN GENERAL

Unsecured claims against a regulated entity, or the receiver therefor, that are proven to the satisfaction of the receiver shall have priority in the following order:

**(A)**Administrative expenses of the receiver.

**(B)**Any other general or senior liability of the regulated entity (which is not a liability described under subparagraph (C) or (D).[2]

**(C)**Any obligation subordinated to general creditors (which is not an obligation described under subparagraph (D)).

**(D)**Any obligation to shareholders or members arising as a result of their status as shareholder or members.

### (2)CREDITORS SIMILARLY SITUATED

All creditors that are similarly situated under paragraph (1) shall be treated in a similar manner, except that the receiver may take any action (including making payments) that does not comply with this subsection, if—

**(A)**the Director determines that such action is necessary to maximize the value of the assets of the regulated entity, to maximize the present value return from the sale or other disposition of the assets of the regulated entity, or to minimize the amount of any loss realized upon the sale or other disposition of the assets of the regulated entity; and

**(B)**all creditors that are similarly situated under paragraph (1) receive not less than the amount provided in subsection (e)(2).

### (3)DEFINITION

As used in this subsection, the term "administrative expenses of the receiver" includes—

**(A)**the actual, necessary costs and expenses incurred by the receiver in preserving the assets of a failed regulated entity or liquidating or otherwise resolving the affairs of a failed regulated entity; and

**(B)**any obligations that the receiver determines are necessary and appropriate to facilitate the smooth and orderly liquidation or other

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 34 of 58

resolution of the regulated entity.

## (d) PROVISIONS RELATING TO CONTRACTS ENTERED INTO BEFORE APPOINTMENT OF CONSERVATOR OR RECEIVER

### (1) AUTHORITY TO REPUDIATE CONTRACTS

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any regulated entity may disaffirm or repudiate any contract or lease—

**(A)** to which such regulated entity is a party;

**(B)** the performance of which the conservator or receiver, in its sole discretion, determines to be burdensome; and

**(C)** the disaffirmance or repudiation of which the conservator or receiver determines, in its sole discretion, will promote the orderly administration of the affairs of the regulated entity.

### (2) TIMING OF REPUDIATION

The conservator or receiver shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

### (3) CLAIMS FOR DAMAGES FOR REPUDIATION

#### (A) In general

Except as otherwise provided under subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

**(i)** limited to actual direct compensatory damages; and

**(ii)** determined as of—

**(I)** the date of the appointment of the conservator or receiver; or

**(II)** in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

#### (B) No liability for other damages

For purposes of subparagraph (A), the term "actual direct compensatory damages" shall not include—

**(i)** punitive or exemplary damages;

**(ii)** damages for lost profits or opportunity; or

**(iii)** damages for pain and suffering.

6/28/22, 4:16 PM 12 U.S. Code § 4617 - Authority over critically undercapitalized regulated entities | U.S. Code | US Law | LII / Legal Information In…

Case 4:22-cv-00598-JM   Document 2   Filed 06/28/22   Page 35 of 58

### (C)Measure of damages for repudiation of financial contracts

In the case of any qualified financial contract or agreement to which paragraph (8) applies, compensatory damages shall be—

**(i)**deemed to include normal and reasonable costs of cover or other reasonable measures of damages utilized in the industries for such contract and agreement claims; and

**(ii)**paid in accordance with this subsection and subsection (e), except as otherwise specifically provided in this section.

### (4)LEASES UNDER WHICH THE REGULATED ENTITY IS THE LESSEE

#### (A)In general

If the conservator or receiver disaffirms or repudiates a lease under which the regulated entity was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined under subparagraph (B)) for the disaffirmance or repudiation of such lease.

#### (B)Payments of rent

Notwithstanding subparagraph (A), the lessor under a lease to which that subparagraph applies shall—

**(i)**be entitled to the contractual rent accruing before the later of the date on which—

  **(I)**the notice of disaffirmance or repudiation is mailed; or

  **(II)**the disaffirmance or repudiation becomes effective, unless the lessor is in default or breach of the terms of the lease;

**(ii)**have no claim for damages under any acceleration clause or other penalty provision in the lease; and

**(iii)**have a claim for any unpaid rent, subject to all appropriate offsets and defenses, due as of the date of the appointment, which shall be paid in accordance with this subsection and subsection (e).

### (5)LEASES UNDER WHICH THE REGULATED ENTITY IS THE LESSOR

#### (A)In general

If the conservator or receiver repudiates an unexpired written lease of real property of the regulated entity under which the regulated entity is the lessor and the lessee is not, as of the date of such repudiation, in default, the lessee under such lease may either—

**(i)**treat the lease as terminated by such repudiation; or

**(ii)**remain in possession of the leasehold interest for the balance of the term of the lease, unless the lessee defaults under the terms of

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 36 of 58

the lease after the date of such repudiation.

**(B)Provisions applicable to lessee remaining in possession**

If any lessee under a lease described under subparagraph (A) remains in possession of a leasehold interest under clause (ii) of subparagraph (A)—

**(i)**the lessee—

**(I)**shall continue to pay the contractual rent pursuant to the terms of the lease after the date of the repudiation of such lease; and

**(II)**may offset against any rent payment which accrues after the date of the repudiation of the lease, and any damages which accrue after such date due to the nonperformance of any obligation of the regulated entity under the lease after such date; and

**(ii)**the conservator or receiver shall not be liable to the lessee for any damages arising after such date as a result of the repudiation, other than the amount of any offset allowed under clause (i)(II).

**(6)CONTRACTS FOR THE SALE OF REAL PROPERTY**

**(A)In general**

If the conservator or receiver repudiates any contract for the sale of real property and the purchaser of such real property under such contract is in possession, and is not, as of the date of such repudiation, in default, such purchaser may either—

**(i)**treat the contract as terminated by such repudiation; or

**(ii)**remain in possession of such real property.

**(B)Provisions applicable to purchaser remaining in possession**

If any purchaser of real property under any contract described under subparagraph (A) remains in possession of such property under clause (ii) of subparagraph (A)—

**(i)**the purchaser—

**(I)**shall continue to make all payments due under the contract after the date of the repudiation of the contract; and

**(II)**may offset against any such payments any damages which accrue after such date due to the nonperformance (after such date) of any obligation of the regulated entity under the contract; and

**(ii)**the conservator or receiver shall—

**(I)**not be liable to the purchaser for any damages arising after such date as a result of the repudiation, other than the amount of any offset allowed under clause (i)(II);

**(II)**deliver title to the purchaser in accordance with the provisions of the contract; and

**(III)**have no obligation under the contract other than the performance required under subclause (II).

### (C)Assignment and sale allowed

#### (i)In general
No provision of this paragraph shall be construed as limiting the right of the conservator or receiver to assign the contract described under subparagraph (A), and sell the property subject to the contract and the provisions of this paragraph.

#### (ii)No liability after assignment and sale
If an assignment and sale described under clause (i) is consummated, the conservator or receiver shall have no further liability under the contract described under subparagraph (A), or with respect to the real property which was the subject of such contract.

### (7)Service contracts

#### (A)Services performed before appointment

In the case of any contract for services between any person and any regulated entity for which the Agency has been appointed conservator or receiver, any claim of such person for services performed before the appointment of the conservator or receiver shall be—

**(i)**a claim to be paid in accordance with subsections (b) and (e); and

**(ii)**deemed to have arisen as of the date on which the conservator or receiver was appointed.

#### (B)Services performed after appointment and prior to repudiation

If, in the case of any contract for services described under subparagraph (A), the conservator or receiver accepts performance by the other person before the conservator or receiver makes any determination to exercise the right of repudiation of such contract under this section—

**(i)**the other party shall be paid under the terms of the contract for the services performed; and

**(ii)**the amount of such payment shall be treated as an administrative expense of the conservatorship or receivership.

### (C)Acceptance of performance no bar to subsequent repudiation

The acceptance by the conservator or receiver of services referred to under subparagraph (B) in connection with a contract described in such subparagraph shall not affect the right of the conservator or receiver to repudiate such contract under this section at any time after such performance.

## (8)CERTAIN QUALIFIED FINANCIAL CONTRACTS

### (A)Rights of parties to contracts

Subject to paragraphs (9) and (10), and notwithstanding any other provision of this chapter (other than subsection (b)(9)(B) of this section), any other Federal law, or the law of any State, no person shall be stayed or prohibited from exercising—

**(i)**any right of that person to cause the termination, liquidation, or acceleration of any qualified financial contract with a regulated entity that arises upon the appointment of the Agency as receiver for such regulated entity at any time after such appointment;

**(ii)**any right under any security agreement or arrangement or other credit enhancement relating to one or more qualified financial contracts; or

**(iii)**any right to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more contracts and agreements described in clause (i), including any master agreement for such contracts or agreements.

### (B)Applicability of other provisions

Subsection (b)(10) shall apply in the case of any judicial action or proceeding brought against any receiver referred to under subparagraph (A), or the regulated entity for which such receiver was appointed, by any party to a contract or agreement described under subparagraph (A)(i) with such regulated entity.

### (C)Certain transfers not avoidable

#### (i)In general

Notwithstanding paragraph (11), or any other provision of Federal or State law relating to the avoidance of preferential or fraudulent transfers, the Agency, whether acting as such or as conservator or receiver of a regulated entity, may not avoid any transfer of money or other property in connection with any qualified financial contract with a regulated entity.

#### (ii)Exception for certain transfers

Clause (i) shall not apply to any transfer of money or other property in connection with any qualified financial contract with a regulated entity if the Agency determines that the transferee had actual intent to hinder, delay, or defraud such regulated entity, the creditors of such regulated entity, or any conservator or receiver appointed for such regulated entity.

### (D) Certain contracts and agreements defined

In this subsection the following definitions shall apply:

### (i) Qualified financial contract

The term "qualified financial contract" means any securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, and any similar agreement that the Agency determines by regulation, resolution, or order to be a qualified financial contract for purposes of this paragraph.

### (ii) Securities contract

The term "securities contract"—

**(I)** means a contract for the purchase, sale, or loan of a security, a certificate of deposit, a mortgage loan, or any interest in a mortgage loan, a group or index of securities, certificates of deposit, or mortgage loans or interests therein (including any interest therein or based on the value thereof) or any option on any of the foregoing, including any option to purchase or sell any such security, certificate of deposit, mortgage loan, interest, group or index, or option, and including any repurchase or reverse repurchase transaction on any such security, certificate of deposit, mortgage loan, interest, group or index, or option;

**(II)** does not include any purchase, sale, or repurchase obligation under a participation in a commercial mortgage loan, unless the Agency determines by regulation, resolution, or order to include any such agreement within the meaning of such term;

**(III)** means any option entered into on a national securities exchange relating to foreign currencies;

**(IV)** means the guarantee by or to any securities clearing agency of any settlement of cash, securities, certificates of deposit, mortgage loans or interests therein, group or index of securities, certificates of deposit, or mortgage loans or interests therein (including any interest therein or based on the value thereof) or option on any of the foregoing, including any option to purchase or sell any such security, certificate of deposit, mortgage loan, interest, group or index, or option;

**(V)** means any margin loan;

**(VI)** means any other agreement or transaction that is similar to any agreement or transaction referred to in this clause;

**(VII)** means any combination of the agreements or transactions referred to in this clause;

**(VIII)** means any option to enter into any agreement or transaction referred to in this clause;

**(IX)** means a master agreement that provides for an agreement or transaction referred to in subclause (I), (III), (IV), (V), (VI), (VII), or (VIII), together with all supplements to any such master agreement, without regard to whether the master agreement provides for an agreement or transaction that is not a securities contract under this clause, except that the master agreement shall be considered to be a securities contract under this clause only with respect to each agreement or transaction under the master agreement that is referred to in subclause (I), (III), (IV), (V), (VI), (VII), or (VIII); and

**(X)** means any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in this clause, including any guarantee or reimbursement obligation in connection with any agreement or transaction referred to in this clause.

### (iii) Commodity contract

The term "commodity contract" means—

**(I)** with respect to a futures commission merchant, a contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade;

**(II)** with respect to a foreign futures commission merchant, a foreign future;

**(III)** with respect to a leverage transaction merchant, a leverage transaction;

**(IV)** with respect to a clearing organization, a contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade that is cleared by such clearing organization, or commodity option traded on, or subject to the rules of, a contract market or board of trade that is cleared by such clearing organization;

**(V)** with respect to a commodity options dealer, a commodity option;

**(VI)** any other agreement or transaction that is similar to any agreement or transaction referred to in this clause;

6/28/22, 4:16 PM
12 U.S. Code § 4617 - Authority over critically undercapitalized regulated entities | U.S. Code | US Law | LII / Legal Information In…

Case 4:22-cv-00598-JM     Document 2     Filed 06/28/22     Page 41 of 58

**(VII)**any combination of the agreements or transactions referred to in this clause;

**(VIII)**any option to enter into any agreement or transaction referred to in this clause;

**(IX)**a master agreement that provides for an agreement or transaction referred to in subclause (I), (II), (III), (IV), (V), (VI), (VII), or (VIII), together with all supplements to any such master agreement, without regard to whether the master agreement provides for an agreement or transaction that is not a commodity contract under this clause, except that the master agreement shall be considered to be a commodity contract under this clause only with respect to each agreement or transaction under the master agreement that is referred to in subclause (I), (II), (III), (IV), (V), (VI), (VII), or (VIII); or

**(X)**any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in this clause, including any guarantee or reimbursement obligation in connection with any agreement or transaction referred to in this clause.

### (iv)Forward contract

The term "forward contract" means—

**(I)**a contract (other than a commodity contract) for the purchase, sale, or transfer of a commodity or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than 2 days after the date on which the contract is entered into, including a repurchase transaction, reverse repurchase transaction, consignment, lease, swap, hedge transaction, deposit, loan, option, allocated transaction, unallocated transaction, or any other similar agreement;

**(II)**any combination of agreements or transactions referred to in subclauses (I) and (III);

**(III)**any option to enter into any agreement or transaction referred to in subclause (I) or (II);

**(IV)**a master agreement that provides for an agreement or transaction referred to in subclauses (I), (II), or (III), together with all supplements to any such master agreement, without regard to whether the master agreement provides for an agreement or transaction that is not a forward contract under this clause, except that the master agreement shall be considered to be a forward contract under this clause only with respect to each agreement or transaction under the master agreement that is referred to in subclause (I), (II), or (III); or

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 42 of 58

**(V)**any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in subclause (I), (II), (III), or (IV), including any guarantee or reimbursement obligation in connection with any agreement or transaction referred to in any such subclause.

### (v)Repurchase agreement

The term "repurchase agreement" (including a reverse repurchase agreement)—

**(I)**means an agreement, including related terms, which provides for the transfer of one or more certificates of deposit, mortgage-related securities (as such term is defined in section 78c of title 15), mortgage loans, interests in mortgage-related securities or mortgage loans, eligible bankers' acceptances, qualified foreign government securities (defined for purposes of this clause as a security that is a direct obligation of, or that is fully guaranteed by, the central government of a member of the Organization for Economic Cooperation and Development, as determined by regulation or order adopted by the appropriate Federal banking authority), or securities that are direct obligations of, or that are fully guaranteed by, the United States or any agency of the United States against the transfer of funds by the transferee of such certificates of deposit, eligible bankers' acceptances, securities, mortgage loans, or interests with a simultaneous agreement by such transferee to transfer to the transferor thereof certificates of deposit, eligible bankers' acceptances, securities, mortgage loans, or interests as described above, at a date certain not later than 1 year after such transfers or on demand, against the transfer of funds, or any other similar agreement;

**(II)**does not include any repurchase obligation under a participation in a commercial mortgage loan, unless the Agency determines by regulation, resolution, or order to include any such participation within the meaning of such term;

**(III)**means any combination of agreements or transactions referred to in subclauses (I) and (IV);

**(IV)**means any option to enter into any agreement or transaction referred to in subclause (I) or (III);

**(V)**means a master agreement that provides for an agreement or transaction referred to in subclause (I), (III), or (IV), together with all supplements to any such master agreement, without regard to whether the master agreement provides for an agreement or transaction that is not a repurchase agreement under this clause, except that the master agreement shall be considered to be a repurchase agreement under this subclause only with respect to each agreement or transaction

6/28/22, 4:16 PM
12 U.S. Code § 4617 - Authority over critically undercapitalized regulated entities | U.S. Code | US Law | LII / Legal Information In…

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 43 of 58

under the master agreement that is referred to in subclause (I), (III), or (IV); and

**(VI)**means any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in subclause (I), (III), (IV), or (V), including any guarantee or reimbursement obligation in connection with any agreement or transaction referred to in any such subclause.

### (vi)Swap agreement

The term "swap agreement" means—

**(I)**any agreement, including the terms and conditions incorporated by reference in any such agreement, which is an interest rate swap, option, future, or forward agreement, including a rate floor, rate cap, rate collar, cross-currency rate swap, and basis swap; a spot, same day-tomorrow, tomorrow-next, forward, or other foreign exchange or precious metals agreement; a currency swap, option, future, or forward agreement; an equity index or equity swap, option, future, or forward agreement; a debt index or debt swap, option, future, or forward agreement; a total return, credit spread or credit swap, option, future, or forward agreement; a commodity index or commodity swap, option, future, or forward agreement; or a weather swap, weather derivative, or weather option;

**(II)**any agreement or transaction that is similar to any other agreement or transaction referred to in this clause and that is of a type that has been, is presently, or in the future becomes, the subject of recurrent dealings in the swap markets (including terms and conditions incorporated by reference in such agreement) and that is a forward, swap, future, or option on one or more rates, currencies, commodities, equity securities or other equity instruments, debt securities or other debt instruments, quantitative measures associated with an occurrence, extent of an occurrence, or contingency associated with a financial, commercial, or economic consequence, or economic or financial indices or measures of economic or financial risk or value;

**(III)**any combination of agreements or transactions referred to in this clause;

**(IV)**any option to enter into any agreement or transaction referred to in this clause;

**(V)**a master agreement that provides for an agreement or transaction referred to in subclause (I), (II), (III), or (IV), together with all supplements to any such master agreement, without regard to whether the master agreement contains an agreement or transaction that is not a swap agreement under this clause, except that the master agreement shall be

Case 4:22-cv-00598-JM   Document 2   Filed 06/28/22   Page 44 of 58

considered to be a swap agreement under this clause only with respect to each agreement or transaction under the master agreement that is referred to in subclause (I), (II), (III), or (IV); and

**(VI)**any security agreement or arrangement or other credit enhancement related to any agreements or transactions referred to in subclause (I), (II), (III), (IV), or (V), including any guarantee or reimbursement obligation in connection with any agreement or transaction referred to in any such subclause.

### (vii)Treatment of master agreement as one agreement
Any master agreement for any contract or agreement described in any preceding clause of this subparagraph (or any master agreement for such master agreement or agreements), together with all supplements to such master agreement, shall be treated as a single agreement and a single qualified financial contract. If a master agreement contains provisions relating to agreements or transactions that are not themselves qualified financial contracts, the master agreement shall be deemed to be a qualified financial contract only with respect to those transactions that are themselves qualified financial contracts.

### (viii)Transfer
The term "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the equity of redemption of the regulated entity.

## (E)Certain protections in event of appointment of conservator
Notwithstanding any other provision of this section, any other Federal law, or the law of any State (other than paragraph (10) of this subsection and subsection (b)(9)(B)), no person shall be stayed or prohibited from exercising—

**(i)**any right such person has to cause the termination, liquidation, or acceleration of any qualified financial contract with a regulated entity in a conservatorship based upon a default under such financial contract which is enforceable under applicable noninsolvency law;

**(ii)**any right under any security agreement or arrangement or other credit enhancement relating to 1 or more such qualified financial contracts; or

**(iii)**any right to offset or net out any termination values, payment amounts, or other transfer obligations arising under or in connection with such qualified financial contracts.

Case 4:22-cv-00598-JM   Document 2   Filed 06/28/22   Page 45 of 58

### (F)Clarification

No provision of law shall be construed as limiting the right or power of the Agency, or authorizing any court or agency to limit or delay in any manner, the right or power of the Agency to transfer any qualified financial contract in accordance with paragraphs (9) and (10), or to disaffirm or repudiate any such contract in accordance with subsection (d)(1).

### (G)Walkaway clauses not effective

#### (i)In general

Notwithstanding the provisions of subparagraphs (A) and (E), and sections 4403 and 4404 of this title, no walkaway clause shall be enforceable in a qualified financial contract of a regulated entity in default.

#### (ii)Walkaway clause defined

For purposes of this subparagraph, the term "walkaway clause" means a provision in a qualified financial contract that, after calculation of a value of a party's position or an amount due to or from 1 of the parties in accordance with its terms upon termination, liquidation, or acceleration of the qualified financial contract, either does not create a payment obligation of a party or extinguishes a payment obligation of a party in whole or in part solely because of the status of such party as a nondefaulting party.

### (9)TRANSFER OF QUALIFIED FINANCIAL CONTRACTS

In making any transfer of assets or liabilities of a regulated entity in default which includes any qualified financial contract, the conservator or receiver for such regulated entity shall either—

### (A)transfer to 1 person—

#### (i)all qualified financial contracts between any person (or any affiliate of such person) and the regulated entity in default;

#### (ii)all claims of such person (or any affiliate of such person) against such regulated entity under any such contract (other than any claim which, under the terms of any such contract, is subordinated to the claims of general unsecured creditors of such regulated entity);

#### (iii)all claims of such regulated entity against such person (or any affiliate of such person) under any such contract; and

#### (iv)all property securing, or any other credit enhancement for any contract described in clause (i), or any claim described in clause (ii) or (iii) under any such contract; or

### (B)transfer none of the financial contracts, claims, or property referred to under subparagraph (A) (with respect to such person and

any affiliate of such person).

### (10)NOTIFICATION OF TRANSFER

#### (A)In general

The conservator or receiver shall notify any person that is a party to a contract or transfer by 5:00 p.m. (Eastern Standard Time) on the business day following the date of the appointment of the receiver in the case of a receivership, or the business day following such transfer in the case of a conservatorship, if—

**(i)**the conservator or receiver for a regulated entity in default makes any transfer of the assets and liabilities of such regulated entity; and

**(ii)**such transfer includes any qualified financial contract.

#### (B)Certain rights not enforceable

##### (i)Receivership

A person who is a party to a qualified financial contract with a regulated entity may not exercise any right that such person has to terminate, liquidate, or net such contract under paragraph (8)(A) of this subsection or under section 4403 or 4404 of this title, solely by reason of or incidental to the appointment of a receiver for the regulated entity (or the insolvency or financial condition of the regulated entity for which the receiver has been appointed)—

**(I)**until 5:00 p.m. (Eastern Standard Time) on the business day following the date of the appointment of the receiver; or

**(II)**after the person has received notice that the contract has been transferred pursuant to paragraph (9)(A).

##### (ii)Conservatorship

A person who is a party to a qualified financial contract with a regulated entity may not exercise any right that such person has to terminate, liquidate, or net such contract under paragraph (8)(E) of this subsection or under section 4403 or 4404 of this title, solely by reason of or incidental to the appointment of a conservator for the regulated entity (or the insolvency or financial condition of the regulated entity for which the conservator has been appointed).

##### (iii)Notice

For purposes of this paragraph, the conservator or receiver of a regulated entity shall be deemed to have notified a person who is a party to a qualified financial contract with such regulated entity, if the conservator or receiver has taken steps reasonably calculated to provide notice to such person by the time specified in subparagraph (A).

### (C)Business day defined

For purposes of this paragraph, the term "business day" means any day other than any Saturday, Sunday, or any day on which either the New York Stock Exchange or the Federal Reserve Bank of New York is closed.

### (11)DISAFFIRMANCE OR REPUDIATION OF QUALIFIED FINANCIAL CONTRACTS

In exercising the rights of disaffirmance or repudiation of a conservator or receiver with respect to any qualified financial contract to which a regulated entity is a party, the conservator or receiver for such institution shall either—

**(A)**disaffirm or repudiate all qualified financial contracts between—

**(i)**any person or any affiliate of such person; and

**(ii)**the regulated entity in default; or

**(B)**disaffirm or repudiate none of the qualified financial contracts referred to in subparagraph (A) (with respect to such person or any affiliate of such person).

### (12)CERTAIN SECURITY INTERESTS NOT AVOIDABLE

No provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any regulated entity, except where such an interest is taken in contemplation of the insolvency of the regulated entity, or with the intent to hinder, delay, or defraud the regulated entity or the creditors of such regulated entity.

### (13)AUTHORITY TO ENFORCE CONTRACTS

### (A)In general

Notwithstanding any provision of a contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of, or the exercise of rights or powers by, a conservator or receiver, the conservator or receiver may enforce any contract, other than a contract for liability insurance for a director or officer, or a contract or a regulated entity bond, entered into by the regulated entity.

### (B)Certain rights not affected

No provision of this paragraph may be construed as impairing or affecting any right of the conservator or receiver to enforce or recover under a liability insurance contract for an officer or director, or regulated entity bond under other applicable law.

### (C)Consent requirement

### (i)In general

Except as otherwise provided under this section, no person may exercise any right or power to terminate, accelerate, or declare a default under any contract to which a regulated entity is a party, or to obtain possession of or exercise control over any property of the regulated entity, or affect any contractual rights of the regulated entity, without the consent of the conservator or receiver, as appropriate, for a period of—

**(I)**45 days after the date of appointment of a conservator; or

**(II)**90 days after the date of appointment of a receiver.

### (ii)Exceptions

This subparagraph shall not—

**(I)**apply to a contract for liability insurance for an officer or director;

**(II)**apply to the rights of parties to certain qualified financial contracts under subsection (d)(8); and

**(III)**be construed as permitting the conservator or receiver to fail to comply with otherwise enforceable provisions of such contracts.

## (14)Savings clause

The meanings of terms used in this subsection are applicable for purposes of this subsection only, and shall not be construed or applied so as to challenge or affect the characterization, definition, or treatment of any similar terms under any other statute, regulation, or rule, including the Gramm-Leach-Bliley Act, the Legal Certainty for Bank Products Act of 2000 [7 U.S.C. 27 to 27f], the securities laws (as that term is defined in section 78c(a)(47) of title 15), and the Commodity Exchange Act [7 U.S.C. 1 et seq.].

## (15)Exception for Federal Reserve and Federal Home Loan Banks

No provision of this subsection shall apply with respect to—

**(A)**any extension of credit from any Federal Home Loan Bank or Federal Reserve Bank to any regulated entity; or

**(B)**any security interest in the assets of the regulated entity securing any such extension of credit.

## (e)Valuation of claims in default

### (1)In general

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 49 of 58

Notwithstanding any other provision of Federal law or the law of any State, and regardless of the method which the Agency determines to utilize with respect to a regulated entity in default or in danger of default, including transactions authorized under subsection (i), this subsection shall govern the rights of the creditors of such regulated entity.

### (2)MAXIMUM LIABILITY

The maximum liability of the Agency, acting as receiver or in any other capacity, to any person having a claim against the receiver or the regulated entity for which such receiver is appointed shall be not more than the amount that such claimant would have received if the Agency had liquidated the assets and liabilities of the regulated entity without exercising the authority of the Agency under subsection (i).

### (f)LIMITATION ON COURT ACTION

Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver.

### (g)LIABILITY OF DIRECTORS AND OFFICERS

#### (1)IN GENERAL

A director or officer of a regulated entity may be held personally liable for monetary damages in any civil action described in paragraph (2) brought by, on behalf of, or at the request or direction of the Agency, and prosecuted wholly or partially for the benefit of the Agency—

**(A)**acting as conservator or receiver of such regulated entity; or

**(B)**acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator.

#### (2)ACTIONS ADDRESSED

Paragraph (1) applies in any civil action for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care than gross negligence, including intentional tortious conduct, as such terms are defined and determined under applicable State law.

#### (3)NO LIMITATION

Nothing in this subsection shall impair or affect any right of the Agency under other applicable law.

### (h)DAMAGES

In any proceeding related to any claim against a director, officer, employee, agent, attorney, accountant, appraiser, or any other party employed by or providing services to a regulated entity, recoverable damages determined to

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 50 of 58

result from the improvident or otherwise improper use or investment of any assets of the regulated entity shall include principal losses and appropriate interest.

### (i)LIMITED-LIFE REGULATED ENTITIES

#### (1)ORGANIZATION

##### (A)Purpose

The Agency, as receiver appointed pursuant to subsection (a)—

**(i)**may, in the case of a Federal Home Loan Bank, organize a limited-life regulated entity with those powers and attributes of the Federal Home Loan Bank in default or in danger of default as the Director determines necessary, subject to the provisions of this subsection, and the Director shall grant a temporary charter to that limited-life regulated entity, and that limited-life regulated entity may operate subject to that charter; and

**(ii)**shall, in the case of an enterprise, organize a limited-life regulated entity with respect to that enterprise in accordance with this subsection.

##### (B)Authorities

Upon the creation of a limited-life regulated entity under subparagraph (A), the limited-life regulated entity may—

**(i)**assume such liabilities of the regulated entity that is in default or in danger of default as the Agency may, in its discretion, determine to be appropriate, except that the liabilities assumed shall not exceed the amount of assets purchased or transferred from the regulated entity to the limited-life regulated entity;

**(ii)**purchase such assets of the regulated entity that is in default, or in danger of default as the Agency may, in its discretion, determine to be appropriate; and

**(iii)**perform any other temporary function which the Agency may, in its discretion, prescribe in accordance with this section.

#### (2)CHARTER AND ESTABLISHMENT

##### (A)Transfer of charter

###### (i)Fannie Mae

If the Agency is appointed as receiver for the Federal National Mortgage Association, the limited-life regulated entity established under this subsection with respect to such enterprise shall, by operation of law and immediately upon its organization—

**(I)**succeed to the charter of the Federal National Mortgage Association, as set forth in the Federal National Mortgage Association Charter Act [12 U.S.C. 1716 et seq.]; and

**(II)**thereafter operate in accordance with, and subject to, such charter, this Act, and any other provision of law to which the Federal National Mortgage Association is subject, except as otherwise provided in this subsection.

### (ii)Freddie Mac

If the Agency is appointed as receiver for the Federal Home Loan Mortgage Corporation, the limited-life regulated entity established under this subsection with respect to such enterprise shall, by operation of law and immediately upon its organization—

**(I)**succeed to the charter of the Federal Home Loan Mortgage Corporation, as set forth in the Federal Home Loan Mortgage Corporation Charter Act [1] [12 U.S.C. 1451 et seq.]; and

**(II)**thereafter operate in accordance with, and subject to, such charter, this Act, and any other provision of law to which the Federal Home Loan Mortgage Corporation is subject, except as otherwise provided in this subsection.

## (B)Interests in and assets and obligations of regulated entity in default

Notwithstanding subparagraph (A) or any other provision of law—

**(i)**a limited-life regulated entity shall assume, acquire, or succeed to the assets or liabilities of a regulated entity only to the extent that such assets or liabilities are transferred by the Agency to the limited-life regulated entity in accordance with, and subject to the restrictions set forth in, paragraph (1)(B);

**(ii)**a limited-life regulated entity shall not assume, acquire, or succeed to any obligation that a regulated entity for which a receiver has been appointed may have to any shareholder of the regulated entity that arises as a result of the status of that person as a shareholder of the regulated entity; and

**(iii)**no shareholder or creditor of a regulated entity shall have any right or claim against the charter of the regulated entity once the Agency has been appointed receiver for the regulated entity and a limited-life regulated entity succeeds to the charter pursuant to subparagraph (A).

## (C)Limited-life regulated entity treated as being in default for certain purposes

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 52 of 58

A limited-life regulated entity shall be treated as a regulated entity in default at such times and for such purposes as the Agency may, in its discretion, determine.

### (D) Management
Upon its establishment, a limited-life regulated entity shall be under the management of a board of directors consisting of not fewer than 5 nor more than 10 members appointed by the Agency.

### (E) Bylaws
The board of directors of a limited-life regulated entity shall adopt such bylaws as may be approved by the Agency.

## (3) CAPITAL STOCK

### (A) No agency requirement
The Agency is not required to pay capital stock into a limited-life regulated entity or to issue any capital stock on behalf of a limited-life regulated entity established under this subsection.

### (B) Authority
If the Director determines that such action is advisable, the Agency may cause capital stock or other securities of a limited-life regulated entity established with respect to an enterprise to be issued and offered for sale, in such amounts and on such terms and conditions as the Director may determine, in the discretion of the Director.

## (4) INVESTMENTS
Funds of a limited-life regulated entity shall be kept on hand in cash, invested in obligations of the United States or obligations guaranteed as to principal and interest by the United States, or deposited with the Agency, or any Federal reserve bank.

## (5) EXEMPT TAX STATUS
Notwithstanding any other provision of Federal or State law, a limited-life regulated entity, its franchise, property, and income shall be exempt from all taxation now or hereafter imposed by the United States, by any territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority.

## (6) WINDING UP

### (A) In general
Subject to subparagraphs (B) and (C), not later than 2 years after the date of its organization, the Agency shall wind up the affairs of a limited-life regulated entity.

### (B) Extension

6/28/22, 4:16 PM 12 U.S. Code § 4617 - Authority over critically undercapitalized regulated entities | U.S. Code | US Law | LII / Legal Information In...

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 53 of 58

The Director may, in the discretion of the Director, extend the status of a limited-life regulated entity for 3 additional 1-year periods.

### (C)Termination of status as limited-life regulated entity

#### (i)In general

Upon the sale by the Agency of 80 percent or more of the capital stock of a limited-life regulated entity, as defined in clause (iv), to 1 or more persons (other than the Agency)—

**(I)**the status of the limited-life regulated entity as such shall terminate; and

**(II)**the entity shall cease to be a limited-life regulated entity for purposes of this subsection.

#### (ii)Divestiture of remaining stock, if any

**(I)In general**
Not later than 1 year after the date on which the status of a limited-life regulated entity is terminated pursuant to clause (i), the Agency shall sell to 1 or more persons (other than the Agency) any remaining capital stock of the former limited-life regulated entity.

**(II)Extension authorized**
The Director may extend the period referred to in subclause (I) for not longer than an additional 2 years, if the Director determines that such action would be in the public interest.

#### (iii)Savings clause
Notwithstanding any provision of law, other than clause (ii), the Agency shall not be required to sell the capital stock of an enterprise or a limited-life regulated entity established with respect to an enterprise.

#### (iv)Applicability
This subparagraph applies only with respect to a limited-life regulated entity that is established with respect to an enterprise.

### (7)TRANSFER OF ASSETS AND LIABILITIES

#### (A)In general

##### (i)Transfer of assets and liabilities
The Agency, as receiver, may transfer any assets and liabilities of a regulated entity in default, or in danger of default, to the limited-life regulated entity in accordance with and subject to the restrictions of paragraph (1).

6/28/22, 4:16 PM    12 U.S. Code § 4617 - Authority over critically undercapitalized regulated entities | U.S. Code | US Law | LII / Legal Information In...

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 54 of 58

### (ii) Subsequent transfers

At any time after the establishment of a limited-life regulated entity, the Agency, as receiver, may transfer any assets and liabilities of the regulated entity in default, or in danger of default, as the Agency may, in its discretion, determine to be appropriate in accordance with and subject to the restrictions of paragraph (1).

### (iii) Effective without approval

The transfer of any assets or liabilities of a regulated entity in default or in danger of default to a limited-life regulated entity shall be effective without any further approval under Federal or State law, assignment, or consent with respect thereto.

### (iv) Equitable treatment of similarly situated creditors

The Agency shall treat all creditors of a regulated entity in default or in danger of default that are similarly situated under subsection (c)(1) in a similar manner in exercising the authority of the Agency under this subsection to transfer any assets or liabilities of the regulated entity to the limited-life regulated entity established with respect to such regulated entity, except that the Agency may take actions (including making payments) that do not comply with this clause, if—

**(I)** the Director determines that such actions are necessary to maximize the value of the assets of the regulated entity, to maximize the present value return from the sale or other disposition of the assets of the regulated entity, or to minimize the amount of any loss realized upon the sale or other disposition of the assets of the regulated entity; and

**(II)** all creditors that are similarly situated under subsection (c)(1) receive not less than the amount provided in subsection (e)(2).

### (v) Limitation on transfer of liabilities

Notwithstanding any other provision of law, the aggregate amount of liabilities of a regulated entity that are transferred to, or assumed by, a limited-life regulated entity may not exceed the aggregate amount of assets of the regulated entity that are transferred to, or purchased by, the limited-life regulated entity.

### (8) REGULATIONS

The Agency may promulgate such regulations as the Agency determines to be necessary or appropriate to implement this subsection.

### (9) POWERS OF LIMITED-LIFE REGULATED ENTITIES

### (A) In general

Each limited-life regulated entity created under this subsection shall have all corporate powers of, and be subject to the same provisions of law as, the regulated entity in default or in danger of default to which it relates, except that—

**(i)**the Agency may—

**(I)**remove the directors of a limited-life regulated entity;

**(II)**fix the compensation of members of the board of directors and senior management, as determined by the Agency in its discretion, of a limited-life regulated entity; and

**(III)**indemnify the representatives for purposes of paragraph (1)(B), and the directors, officers, employees, and agents of a limited-life regulated entity on such terms as the Agency determines to be appropriate; and

**(ii)**the board of directors of a limited-life regulated entity—

**(I)**shall elect a chairperson who may also serve in the position of chief executive officer, except that such person shall not serve either as chairperson or as chief executive officer without the prior approval of the Agency; and

**(II)**may appoint a chief executive officer who is not also the chairperson, except that such person shall not serve as chief executive officer without the prior approval of the Agency.

### **(B)Stay of judicial action**
Any judicial action to which a limited-life regulated entity becomes a party by virtue of its acquisition of any assets or assumption of any liabilities of a regulated entity in default shall be stayed from further proceedings for a period of not longer than 45 days, at the request of the limited-life regulated entity. Such period may be modified upon the consent of all parties.

### **(10)No Federal status**

#### **(A)Agency status**
A limited-life regulated entity is not an agency, establishment, or instrumentality of the United States.

#### **(B)Employee status**
Representatives for purposes of paragraph (1)(B), interim directors, directors, officers, employees, or agents of a limited-life regulated entity are not, solely by virtue of service in any such capacity, officers or employees of the United States. Any employee of the Agency or of any Federal instrumentality who serves at the request of the Agency as a representative for

purposes of paragraph (1)(B), interim director, director, officer, employee, or agent of a limited-life regulated entity shall not—

**(i)**solely by virtue of service in any such capacity lose any existing status as an officer or employee of the United States for purposes of title 5 or any other provision of law; or

**(ii)**receive any salary or benefits for service in any such capacity with respect to a limited-life regulated entity in addition to such salary or benefits as are obtained through employment with the Agency or such Federal instrumentality.

### (11)AUTHORITY TO OBTAIN CREDIT

#### (A)In general
A limited-life regulated entity may obtain unsecured credit and issue unsecured debt.

#### (B)Inability to obtain credit
If a limited-life regulated entity is unable to obtain unsecured credit or issue unsecured debt, the Director may authorize the obtaining of credit or the issuance of debt by the limited-life regulated entity—

**(i)**with priority over any or all of the obligations of the limited-life regulated entity;

**(ii)**secured by a lien on property of the limited-life regulated entity that is not otherwise subject to a lien; or

**(iii)**secured by a junior lien on property of the limited-life regulated entity that is subject to a lien.

#### (C)Limitations
##### (i) [3] In general
The Director, after notice and a hearing, may authorize the obtaining of credit or the issuance of debt by a limited-life regulated entity that is secured by a senior or equal lien on property of the limited-life regulated entity that is subject to a lien (other than mortgages that collateralize the mortgage-backed securities issued or guaranteed by an enterprise) only if—

**(I)**the limited-life regulated entity is unable to otherwise obtain such credit or issue such debt; and

**(II)**there is adequate protection of the interest of the holder of the lien on the property with respect to which such senior or equal lien is proposed to be granted.

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 57 of 58

### (D) Burden of proof

In any hearing under this subsection, the Director has the burden of proof on the issue of adequate protection.

### (12) EFFECT ON DEBTS AND LIENS

The reversal or modification on appeal of an authorization under this subsection to obtain credit or issue debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so issued, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the issuance of such debt, or the granting of such priority or lien, were stayed pending appeal.

## (j) OTHER AGENCY EXEMPTIONS

### (1) APPLICABILITY

The provisions of this subsection shall apply with respect to the Agency in any case in which the Agency is acting as a conservator or a receiver.

### (2) TAXATION

The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed.

### (3) PROPERTY PROTECTION

No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency.

### (4) PENALTIES AND FINES

The Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

## (k) PROHIBITION OF CHARTER REVOCATION

In no case may the receiver appointed pursuant to this section revoke, annul, or terminate the charter of an enterprise.

(Pub. L. 102–550, title XIII, § 1367, Oct. 28, 1992, 106 Stat. 3980; Pub. L. 110–289, div. A, title I, § 1145(a), July 30, 2008, 122 Stat. 2734.)

Case 4:22-cv-00598-JM    Document 2    Filed 06/28/22    Page 58 of 58